**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **LORENZO PROVENCIO**, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | EP-24-CV-00058-DCG |
| | § | |
| **SAM'S WEST, INC.,** *doing business as* | § | |
| *El Paso Sam's Club #650, also known as* | § | |
| *Sam's Club #6502*, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

In this premises liability case, Plaintiff Lorenzo Provencio alleges that he suffered injuries at Defendant Sam's West, Inc.'s store on April 13, 2022: he slipped and fell backward when he was pulling a bag of dog food weighing 55 pounds from a pallet.[1] Presently before the Court is Sam's West's "Motion for Independent Medical Examination" (ECF No. 60) filed on August 29, 2025.[2] Therein, pursuant to Federal Rule of Civil Procedure 35, Sam's West asks the Court to order Provencio to submit to medical examination to be performed by certain physicians selected by Sam's West.[3] The parties' briefing was completed on September 9, 2025.

On September 16, 2025, the Court, having reviewed the parties' briefs, issued an Interim Order, instructing the parties to meet and confer about the motion and submit a joint statement addressing certain questions raised by their arguments in the briefs.[4] On September 24, the

---

[1] Pl.'s Original Pet. & Jury Demand at 2–3, ECF No. 1.

[2] Senior District Judge David Guaderrama referred the motion to the undersigned Magistrate Judge. *See* Order Referring Mot. to Magistrate J., ECF No. 61.

[3] Def.'s Mot. for Indep. Med. Examination at ¶¶ 3, 8 [hereinafter Def.'s IME Mot.], ECF No. 60.

[4] Interim Order at 4, ECF No. 64.

parties submitted their joint statement, which indicates that they resolved their disputes as to Sam's West's requests for diagnostic testing and imaging—though other disputes remain outstanding.[5] As we shall see, in certain respects, Sam's West's responses to the Court's questions are less than complete. The Court turns to the parties' outstanding disputes.

## I. DISCUSSION

Federal Rule of Civil Procedure 35 permits a district court, upon a showing of "good cause," to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1)–(2)(A). "The 'in controversy' and 'good cause' requirements demand more than 'mere relevance.'" *Grogan v. Kumar*, 873 F.3d 273, 280 (5th Cir. 2017) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)). Rather, they "'require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Id.* (same). If the court determines that the Rule 35 examination is appropriate, its order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). "[T]he movant must produce sufficient information . . . so that the district judge can fulfill his function mandated by the Rule." *Schlagenhauf*, 379 U.S. at 119.

### A. The In-Controversy and Good Cause Requirements

Sam's West argues that Provencio's physical condition is in controversy. Def.'s IME Mot. at ¶ 6. Specifically, according to Sam's West, Provencio alleges that he sustained injuries to his back, neck, head, shoulders, and waist, and he suffers from headaches on a daily basis and

---

[5] Joint Statement at 1, 4, ECF No. 65. Pin citations to the parties' joint statement refer to the page numbers imprinted thereon by the Court's Case Management and Electronic Case Filing system.

feels numbness and tingling in his right leg and arms. *Id*. Further, according to Sam's West, Provencio alleges that he underwent several surgical procedures in an attempt to alleviate his injuries: to wit, "(1) a medial branch block at left sided L4-L5 and L5-S1; (2) a left-sided L4-L5 and left sided L5-S1 radiofrequency ablation; (3) additional series of medial branch blocks to the left sided L2-3 and L3-4; (4) a vertebral motion analysis; and (5) posterior lumber decompression and fusion." *Id*.

The above-mentioned allegations by Provencio about his specific injuries and surgeries do not appear in Provencio's complaint, and Sam's West has not substantiated them with any documents or evidence received during discovery. In his complaint, Provencio does allege that he suffered unspecified injuries because of the slip-and-fall incident, Pl.'s Original Pet. & Jury Demand at 2, and further alleges that immediately after the fall, he "felt immense pain to his head, back, neck and all around his body," *id.* at 3. Critically, in his responsive brief, Provencio does not address, much less dispute, Sam's West's statements about his allegations regarding his injuries, conditions, and surgeries. The Court therefore accepts Sam's West's statements as undisputed.

Sam's West also argues that good cause exists for the medical examinations because Provencio's history of previous injury and medical imaging studies indicate that his alleged injuries are pre-existing. Def.'s IME Mot. at ¶ 7. Sam's West points out that the two main doctors who treated Provencio for his injuries—namely, Dr. Keith Johnson, an orthopedic surgeon, and Dr. Bratislav Velmirovic, a neurosurgeon—noted in their treatment notes that Provencio's injuries were caused by a motor vehicle accident. *Id.* at ¶ 7 (citing Exs. A–B); *see*

*also* Def.'s Reply Br. in Supp. of Def.'s IME Mot. at 3 (same), ECF No. 63.[6]  Again, in his responsive brief, Provencio does not respond to this argument, either.

The Court **FINDS** that the "in controversy" and "good cause" requirements are satisfied here for *physical* examination of Provencio regarding the alleged injuries and conditions mentioned above.  *See Schlagenhauf*, 379 U.S. at 119 ("A plaintiff in a negligence action who asserts . . . physical injury places that . . . physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.").

## B.  The Examining Person(s) and the Examination's Time, Place, Manner, Conditions, and Scope

Sam's West proposes three physicians to perform its requested examinations: (1) Warren Neely, M.D., a board-certified neurosurgeon, (2) Justin O'Rourke, Ph. D., ABPP-CN, a board-certified clinical neuropsychologist, and (3) Kelly Fitzpatrick, D.O., a board-certified Orthopedic Surgeon.  Def.'s IME Mot. at ¶ 8; Joint Statement at 2 & n.1.

In response to the Court's Interim Order, Sam's West has submitted each physician's curriculum vitae.  Joint Statement, Exs. A–C.  For Dr. Neely, Sam's West has submitted a list of tests or examinations that he would perform, and for Dr. O'Rourke, it submitted a narrative description of the examinations or tests.  *Id.*, Exs. D–E.  However, for Dr. Fitzpatrick, Sam's West has not provided such a list or narrative description of the tests or examinations that Dr. Fitzpatrick would perform—despite that the Court, in the Interim Order, instructed Sam's West to "state what types of examination [each] examiner will perform."  Interim Order at 3.  Instead, Sam's West states only that Dr. Fitzpatrick will perform a "comprehensive physical

---

[6] Pin citations to Sam's West's reply brief refer to the page numbers imprinted thereon by the Court's Case Management and Electronic Case Filing system.

examination" of Provencio's neck and back to assess limitations in mobility or activity. Joint Statement at 2. Provencio objects to Dr. Fitzpatrick as an examining physician on the grounds that Sam's West has not explained what kind of examination he intends to perform, or the scope of that examination. *Id.* at 3.

The Court **DENIES** Sam's West's request for examination by Dr. Fitzpatrick for insufficient detail about the types of examinations he would perform; Sam's West may re-urge this request upon providing additional information describing his intended examinations. *See Heirsch v. Dias*, No. CIV.A. 12-419-BAJ, 2013 WL 2302128, at *1 (M.D. La. May 22, 2013) (denying without prejudice to re-urging a Rule 35 motion because the movant failed to provide sufficient information about the types of tests the proposed physician would perform).

The Court also **DENIES** Sam's West's request for examination by Dr. O'Rourke, who intends to, *inter alia*, administer psychological tests and evaluate Provencio's psychological functioning. Joint Statement, Ex. E; *see also Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 395 (S.D. Tex. 2013) (denying defendant's request for neuropsychological examination where the plaintiff alleged a garden variety, routine request for damages for mental anguish, which does not place a party's mental condition in controversy); Pl.'s Original Pet. & Jury Demand at 5 (seeking damages for mental anguish).

The Court **GRANTS** Sam's West's request for examination by Dr. Neely subject to the limitations and instructions set forth below. As mentioned, Sam's West has submitted a list of examinations or tests that it proposes Dr. Neely would perform. On the list, various tests or examinations are categorized under the headings "mental status examination," "cranial nerve examination," "motion system," "deep tendon reflexes," "sensation," and "cerebellum." *Id.*, Ex. D at 25–26. In the joint statement, Provencio does not challenge the propriety of these

examinations. Having carefully reviewed the list in view of the alleged injuries and conditions that Sam's West has articulated above, *see* Part I.A, *supra*, the Court LIMITS the listed tests or examinations per category as follows.

- <u>Mental status examination</u>: Dr. Neely MAY NOT perform the listed tests or examinations.
- <u>Cranial nerve examination</u>: Dr. Neely MAY NOT perform the listed tests or examinations EXCEPT an examination of Provencio's "shoulder girdle muscles (XI)."
- <u>Motor system</u>: Dr. Neely MAY perform the listed tests or examinations.
- <u>Deep tendon reflexes</u>: Dr. Neely MAY perform the listed tests or examinations.
- <u>Sensation</u>: Dr. Neely MAY perform the listed tests or examinations EXCEPT the tests or examinations for graphesthesia, stereognosis, two-point discrimination, or extinction, and any Romberg test for vision, vestibulocochlear system, and epicritic sensation.
- <u>Cerebellum</u>: Dr. Neely MAY perform the listed tests or examinations EXCEPT the tests or examinations for nystagmus, intention tremor, or staccato speech.

Dr. Neely's tests or examinations **MUST COMPLY** with the following additional limitations:[7]

- the tests or examinations **SHALL BE** limited to the body region(s) at issue—that is, head, back, neck, spine, shoulders, waist, legs, and arms—and **MAY NOT** involve any invasive procedures, injections, blood draws, radiography, electromyography, nerve-conduction study, or psychometric testing without express consent of Plaintiff or leave of Court;
- all tests or examinations should be concluded within **120 minutes in total**; and
- all raw data, test materials (including notes and scoring sheets), and the final report should be produced to Plaintiff within **21 days** of the completion of the tests or examinations.

---

[7] In his responsive brief, Provencio proposes these limitations, which the Court has modified here in certain respects. Pl.'s Resp. to Def.'s IME Mot. at 5, ECF No. 62. In the September 16, 2025 Interim Order, the Court ordered Sam's West to state if it disagrees with these limitations, *see* Interim Order at 4 ("Question No. 3"), but in the joint statement, Sam's West does not address them except to say that final reports shall be produced not more than 30 days from completion of the exams, Joint Statement at 4–5.

The parties **SHALL AGREE** upon a date—from October 9, 16, 23 and 30, 2025—and a suitable place in El Paso, Texas, for Dr. Neely's examination of Provencio.[8] Dr. Neely shall begin his examination at 9:00 AM on the agreed-upon date and conclude by 5:00 PM on the same day.

## II.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Sam's West, Inc.'s Motion for Independent Medical Examination (ECF No. 60) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Lorenzo Provencio shall submit to physical examination by Dr. Warren Neely—consistent with the limitations and instructions set forth in Part I.B of this Order.

**So ORDERED and SIGNED this  1st  day of October 2025.**

                                                  **ANNE T. BERTON**
                                                  **UNITED STATES MAGISTRATE JUDGE**

---

[8] It appears that the Neely practices in San Antonio, Texas, *see* Joint Statement, Ex. A, and Sam's West states that the examinations should take place in El Paso, Texas, where Provencio resides, Def.'s IME Mot, at ¶ 9.